# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 11, 2012

## STATE OF TENNESSEE v. EDWARD SHAWNDALE ROBINSON

**Appeal from the Circuit Court for Hickman County**
**No. 09-5119CR     Robbie Beal, Judge**

---

**No.  M2011-02000-CCA-R3-CD - Filed April 29, 2013**

---

Following a traffic stop on Interstate 40, Appellant, Edward Shawndale Robinson, was indicted by the Hickman County Grand Jury in August of 2009 for possession of more than ten pounds of marijuana with the intent to deliver and following traffic too closely. Appellant sought unsuccessfully to have evidence seized from him suppressed prior to trial. After a jury trial, Appellant was convicted of possession of more than ten pounds of marijuana and sentenced to six years as a Range II, multiple offender. Appellant presents the following issues for our review on appeal: (1) whether Appellant received a fair and impartial jury; (2) whether the stop and subsequent search of Appellant's vehicle was valid; and (3) whether Appellant received ineffective assistance of counsel at trial. After a review of the law and applicable authorities, we conclude Appellant's failure to include transcripts of the hearing on the motion for new trial and hearing on the motion to suppress results in a waiver of the issues raised on appeal. Further, Appellant has failed to show plain error that would result in our review of the issues despite the waiver. Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ALAN E. GLENN, JJ., joined.

Edward Shawndale Robinson, Pro Se, Pikeville, Tennessee.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Ronald L. Davis, District Attorney General, and Sean B. Duddy, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

Officer Corey Currie, with the 21st Judicial District Drug Task Force, was on routine patrol on Interstate 40 in Hickman County on February 2, 2009, when he observed Appellant driving a 2009 Chevrolet Malibu. Appellant was closely following a "bobtail" truck, described as a tractor-trailer without the trailer attached. Officer Currie explained that Appellant was "closing in on the bobtail truck" but did not pass the truck. Officer Currie felt that this type of driving was "unusual" so he pulled out of his observation spot and drove a few miles on the interstate in order to catch up to Appellant's vehicle.

Officer Currie observed Appellant's driving from behind for an unspecified period of time and distance. Eventually, Appellant made an "abrupt" lane change from the left lane to the right lane, getting directly behind an orange tractor-trailer truck. At that time, there were less than two car lengths between Appellant's vehicle and the truck. Appellant drove closely behind the truck for about one mile before Officer Currie initiated his blue lights to pull Appellant over for following the truck too closely.

When Officer Currie initiated the traffic stop, he observed Appellant as the driver of the vehicle. The vehicle also contained two other adults and two children. Officer Currie asked for Appellant's driver's license. Appellant appeared "flustered" but produced the license. Appellant was asked to step out of the vehicle where Officer Currie explained the reason for the stop as following too closely. Appellant informed Officer Currie that the vehicle was a rental. Officer Currie was informed that Appellant was coming from San Antonio, Texas and returning home to Dayton, Ohio. Appellant told Officer Currie to "hang out for a second" while he retrieved the rental agreement from the vehicle.

Officer Currie talked to LaShonda Robinson, the vehicle's front seat passenger. She informed the officer that they were returning from visiting a friend in Austin, Texas. Ms. Robinson found a rental agreement and turned it over to the officer. The rental agreement did not list Appellant as the renter of the vehicle. Officer Currie was told that the group left Ohio on Saturday and were on their way back to Dayton from Texas when they were pulled over on Monday.

Officer Currie then talked to Appellant, again asking him where the rental agreement was located. Appellant responded that they just "gave [him] the keys." Appellant held his hands in a "defensive posture," behavior that Officer Currie deemed "unusual."

At that point, Officer Currie asked the other adult passengers in the vehicle for their identification. Ms. Robinson produced her identification; the rear passenger did not have any identification and provided her name only. Again, Ms. Robinson told Officer Currie that they visited a "friend whose name was Chrisy" in Texas. Appellant informed the officer that they visited a friend named "Chris."

Officer Currie called for backup prior to calling in Appellant's driver's license. At that point, "based on the totality of the circumstances," Officer Currie determined that he would ask for consent to search the vehicle. The inconsistencies about the purpose and location of the trip, the lack of a rental agreement, and the short length of the long-distance trip, led him to believe that something was amiss.

Appellant was asked if he had anything illegal in the vehicle. He replied in the negative because he "had kids in the vehicle." Officer Currie asked Appellant if he had any illegal drugs and his "face froze for a sec and then he said no." Appellant denied transporting drugs and offered to open the trunk for the officer to inspect the contents. Officer Currie described this offer as "unusual" because most drivers do not offer to open their trunks. Based on Appellant's offer, Officer Currie thought that there must be something "going on" in another area of the vehicle. At Currie's request Appellant signed a consent to search form.

By that time, Officer Shane Daugherty had arrived on the scene. The officers instructed all the passengers of the vehicle to wait in the police cars while the search was conducted. The trunk of the vehicle contained only a small backpack and a duffle bag with "a couple of shirts in it." Officer Currie thought that this was strange based on the length of the trip that the occupants claimed they were taking and the fact that there were small children in the vehicle.

When the officer searched the engine compartment, he noticed that two bolts were not "screwed down all the way" on a plastic panel covering the radiator. Additionally, there were "freshly tooled . . . scratches around the bolts. . . ." Officer Currie surmised that a rental car with only 10,000 miles would not need "that type of tooling" and, even if it did need something done, it would have been done professionally, with a "socket type of tool." If the proper tool was used, it would not leave "scars and scratches surrounding the area."

At that point, Officer Currie looked at the hood latch and saw several brown, taped packages hidden between the radiator and the front bumper. Appellant was placed in handcuffs.

Upon further inspection, the packages contained "compressed" marijuana weighing a total of 19.8 pounds. The wholesale value of the marijuana was estimated at approximately $20,000, while the retail value was estimated at $32,000. Ms. Robinson, who later identified herself as Appellant's sister, claimed that the marijuana belonged to her. Ms. Robinson also commented that she did not want Appellant to get arrested because he had a criminal record. Officer Currie determined that Ms. Robinson was making a false confession.

Upon further search of the vehicle, the rental contract was found under the front passenger seat, listing Appellant as the renter of the vehicle. A pair of pliers was located in the center console, and the receipt for the purchase of the pliers was located in Appellant's coat pocket. The pliers were purchased in San Antonio, Texas on February 1. According to Officer Currie, the markings on the bolts covering the radiator were consistent with the pliers found in the vehicle.

Officer Daugherty gave Appellant his *Miranda* rights and Appellant agreed to talk to him. Appellant reported that a man named Dexter asked him to rent a vehicle to drive to San Antonio to pick him up. Appellant followed the instructions, and went to a Motel 8 in San Antonio, where he met Dexter and stayed the night. Dexter instructed Appellant to buy a pair of pliers from the Auto Zone. When Appellant delivered the pliers, Dexter left the hotel with the vehicle. He returned approximately twenty minutes later. When Dexter returned, he informed Appellant that he did not need a ride to Ohio and that Appellant was to drive the vehicle back to Ohio and wait for "further instructions." Appellant was to be paid $600 for the trip. Appellant claimed that the passengers in the vehicle did not know what was going on. Appellant admitted that Dexter was a "big time drug dealer" but claimed that he did not know the packages were in the vehicle.

Once at the jail, Appellant admitted that this was his third trip to pick up marijuana. Appellant offered information that would be relevant to the "Dayton, Ohio area." During this interview, officers asked Appellant specific questions. He was "vague" in his responses but told officers if he was let out of jail he would work with Ohio officers. The officers informed Appellant that they could not let him out of jail but that they could put him in contact with Ohio officials once he made bond. Appellant made bond but never contacted officers about helping out in Ohio.

Based on the information gleaned from the traffic stop, Appellant's arrest, and Appellant's statements, he was indicted by the Hickman County Grand Jury in August of 2009 for possession of more than ten pounds of marijuana with the intent to deliver and following other traffic too closely. According to the technical record, Appellant filed a motion to suppress prior to trial. The trial court denied the motion. The transcript of that hearing does not appear in the record on appeal.

At trial, Officers Currie and Daugherty testified to the events leading up to Appellant's arrest. After the testimony of Officer Currie, defense counsel moved for a mistrial based on the fact that there were "no African Americans represented on the [jury] panel." The trial court informed defense counsel that there was "not a large population" of African Americans in Hickman County and was "satisfied that th[e] panel was obtained at random through the clerk's office."

The trial court clerk testified about the procedures involved in jury selection, informing the trial court that the jury panels were obtained from the "Tennessee Department of Safety driver's licensing." The clerk uses a computer program to select the number of individuals she needs for a jury pool. The computer program then generates a list of the required number of people. Those people are issued a summons, then "drawn at random." There is no way to determine the race of the pool of people that are drawn from the database.

After hearing this testimony, the trial court determined that the jury pool was "representative of a jury of the peers" because there was no "inherent method of excluding the African American population."

At the conclusion of the trial, Appellant was found guilty of possession of more than ten pounds of marijuana for delivery. The trial court held a separate sentencing hearing, at which Appellant was sentenced as a Range II, multiple offender to a sentence of six years. After the denial of a motion for new trial, Appellant filed a timely notice of appeal. On appeal, Appellant argues that he did nor receive a fair and impartial jury at trial, the stop and subsequent search of Appellant's vehicle was invalid, and he received ineffective assistance of counsel at trial.

*Analysis*

*Jury Challenge*

Initially, on appeal, Appellant claims that the jury not representative of his peers because the jury did not contain any African Americans. The State argues that the trial court properly determined the jury pool selection was made at random and did not violate Appellant's right to a fair trial.

At the outset of our analysis, we note that the record on appeal does not contain a transcript of the hearing on the motion for new trial. Pursuant to the Rules of Appellate Procedure, Appellant is responsible for procuring the relevant transcripts and filing them within sixty days of the notice of appeal or notifying the trial court clerk that no transcript will be filed. Tenn. R. App. P. 24(b). Moreover, Appellant is responsible for ensuring that

a complete and adequate record is prepared and transmitted on appeal. *See, e.g., State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999). If an incomplete record is presented to this Court, Appellant risks waiving issues raised on appeal. *See, e.g., State v. Cindy L. Holder*, No. E2000-01191-CCA-R3-CD, 2003 WL 367244 (Tenn. Crim. App., at Jackson, Feb.21, 2003).

Appellant herein has been given ample opportunity, both at the beginning of this appeal and in response to the State's brief, to cure the defects in the record, but he has not done so. The alleged errors about which the Appellant complains would necessarily require this Court to review what transpired during the hearing on the motion for new trial. However, because Appellant has not secured those transcripts in the appellate record, he has waived consideration of the issues with the exception of those regarding sufficiency of the evidence and sentencing. In such a case, the judgment of the trial court must be presumed correct. *State v. Bennett*, 798 S.W.2d 783, 789 (Tenn. Crim. App. 1990). Moreover, we are precluded from addressing issues on appeal other than sufficiency and sentencing unless they rise to the level of plain error.

In order to review an issue under the plain error doctrine, five factors must be present: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. *See State v. Smith*, 24 S.W.3d 274, 283 (Tenn. 2000) (adopting this Court's plain error test set forth in *State v. Adkisson*, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994)); *see also* Tenn. R. Crim. P. 36(b).

With regard to Appellant's argument that the jury was not representative of his peers, we determine that a clear and unequivocal rule of law was not breached. Although a defendant has no right to a jury composed in whole or in part of members of his own race, *Powers v. Ohio*, 499 U.S. 400, 404 (1991), "[s]election of a petit jury from a representative cross-section of the community is an essential component of the Sixth Amendment right to a jury trial." *State v. Bell*, 745 S.W.2d 858, 860 (Tenn. 1988) (citing *Taylor v. Louisiana*, 419 U.S. 522 (1975)). To determine if a defendant has been denied his constitutional right to a venire comprised of a fair cross-section of the community, Tennessee applies the three-pronged test set forth in *Duren v. Missouri*, 439 U.S. 357, 364 (1979). *State v. Mann*, 959 S.W.2d 503, 535 (Tenn. 1997). Thus, to establish a prima facie violation of the fair cross-section requirement, the defendant must show:

> "(1) that the group alleged to be excluded is a 'distinctive group' in the community; (2) that the representation of this group in venires from which

juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this [under]representation is due to systematic exclusion of the group in the jury-selection process."

*Bell*, 745 S.W.2d at 861 (quoting *Duren*, 439 U.S. at 364). There is nothing in the record to show that there was an underrepresentation of African Americans in the jury pool due to a systematic exclusion of the group in the jury selection process. To the contrary, the court clerk testified that the jury pool was obtained via a random computer program generated from driver's license numbers. We will not review this issue for plain error. Appellant is not entitled to relief on this issue.

*Motion to Suppress*

Next, Appellant complains that the trial court erred in denying his motion to suppress. Specifically, Appellant claims that the marijuana was the "fruit of the poisonous tree" and should be suppressed. Additionally, he insists that officers violated his rights when he invoked his right to counsel and they continued to question him about the drugs. The State argues that Appellant has waived the issue for failure to include the transcript of the hearing on the motion to suppress and for failure to raise the fifth amendment issue at trial or in a motion for new trial. We agree.

From the technical record, we have determined that through counsel Appellant filed a pretrial motion to suppress.[1] In that motion, he argued that the stop of the vehicle was illegal, that the stop was excessive in length, and that his arrest was not supported by probable cause. The trial court denied the motion on December 22, 2010. In that order, the trial court stated that a hearing was held on the motion on October 6, 2009. The transcript of this motion hearing does not appear in the record on appeal.

Again, Appellant has the obligation to ensure that the record on appeal is sufficient to allow meaningful review. *State v. Ballard*, 855 S.W.2d 557, 560-61 (Tenn. 1993). Thus, the failure to include the transcript of a suppression hearing generally constitutes a waiver of the issue. *See* Tenn. R. App. P. 24(b); *Thompson v. State*, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997). When no transcript is included in the record, this Court must presume that the ruling of the trial court is correct. *See Ballard*, 855 S.W.2d at 560-61; *Taylor*, 669 S.W.2d at 699. Because the record on appeal does not contain a transcript of the suppression hearing, Appellant has waived this issue.

---

[1]Appellant is proceeding pro se on appeal.

Moreover, Appellant did not raise the issue of a Fifth Amendment violation in his motion to suppress, at trial, or in his motion for new trial. "[N]o issue presented for review shall be predicated upon error in the admission of exclusion of evidence . . . unless the same was specifically stated in a motion for new trial; otherwise such issues will be treated as waived." Tenn. R. App. P. 3. Appellant has waived this issue.

*Ineffective Assistance of Counsel*

Lastly, Appellant argues that he received ineffective assistance of counsel at trial, listing five separate allegations. The State argues that Appellant has waived this issue for failure to raise it in the motion for new trial and failure to include the transcript of the motion for new trial on appeal.

We have repeatedly warned that the decision to raise this issue on direct appeal is "fraught with peril." *State v. Jimmy L. Sluder*, No. 1236, 1990 WL 26552, at *7 (Tenn. Crim. App., at Knoxville, Mar. 14, 1990), *perm. app. denied*, (Tenn. 1990). The defendant risks having the issue resolved finally "without an evidentiary hearing which, if held, might be the only way harm could be shown-a prerequisite for relief in ineffective trial counsel claims." *Jimmy Wayne Wilson v. State*, No. 909, 1991 WL 87245, at *6 (Tenn. Crim. App., at Knoxville, May 29, 1991).

In other words, claims of ineffective assistance of counsel are generally more appropriately raised in a petition for post-conviction relief rather than on direct appeal. *See State v. Carruthers*, 35 S.W.3d 516, 551 (Tenn. 2000); *see also State v. Anderson*, 835 S.W.2d 600, 606 (Tenn. Crim. App. 1992). Moreover, once the merits of an ineffective assistance of counsel claim have been addressed on direct appeal, the issue may not be revisited in a post-conviction proceeding. *See Bobby Allen Joyner v. State*, No. 03C01-9807-CR-00260, 1999 WL 318832, at *2 (Tenn. Crim. App., at Knoxville, May 19, 1999), *perm. app. denied*, (Tenn. 1999). Thus, the better practice is to reserve the issue for a post-conviction proceeding in the event the direct appeal is unsuccessful. *State v. Ricky Brandon*, No. M2002-00073-CCA-R3-CD, 2002 WL 31373470, at *2 (Tenn. Crim. App., at Nashville, Oct. 15, 2002), *perm. app. denied*, (Tenn. Feb. 24, 2003).

Noting these cautions, we also acknowledge that Appellant herein raised ineffective assistance of counsel in his motion for new trial. The examples of ineffective assistance of counsel he raises on appeal, however, are different than those alleged in the motion for new trial. As pointed out above, the transcript on the hearing on the motion for new trial does not appear in the record on appeal. Thus, we are unable to determine whether Appellant addressed his concerns, as raised on appeal, to the trial court. Again, an incomplete record risks waiving issues raised on appeal. *See, e.g., Cindy L. Holder*, 2003 WL 367244, at *4.

We determine Appellant has waived this issue for failure to provide this Court with an adequate record. Further, he has failed to demonstrate clear and convincing proof that he received ineffective assistance of counsel at trial. Appellant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE